Mr. Trembath Your Honors, may it please the Court, Bosch would like to start its argument with willful infringement because it prizes its reputation. The Court below determined that it wasn't necessary for a party to know that the patent is asserted to be found a willful infringer. That's contrary to law, especially the Gustafson case, which is right on point. Black & Decker has two families of patents. A family that issued to Smith, a Black & Decker employee, and a family of patents that issued to Dom's that purchased the Dom's family. And the Dom's family is the patents that are asserted in this case. Is that the reason you, with knowledge of the patents, sent it off to China to be replicated? Is it because you thought it was invalid for inequitable conduct? No, Your Honor. There is no evidence in the record that Bosch knew of the asserted patents. What's at page 824-250? This references DeWalt patents. Black & Decker had two families of patents. The Smith family and the Dom's family. The Dom's patents are asserted in this case. Bosch was aware of the Smith family of patents, not the patents asserted in this case. So everything in this is referencing either the Smith family This references the Smith family of patents, yes, Your Honor. Black & Decker argued at trial that references to the Smith family of patents should be excluded to avoid confusion. They created a shield for the majority. Then they used that exclusion to create confusion driven by that confusion. They wouldn't have let Bosch explain that the DeWalt patents were indeed the Smith family of patents. Well, does Seagate affect this? I don't think we need to get to Seagate, Your Honor. The same rule applies in Seagate. You have to have knowledge. There has to be clear and convincing evidence that you have knowledge of the asserted patents of the DeWalt family of patents. But the other part of Seagate talks about whether or not they were legitimate defenses. Whether or not they were legitimate defenses. Right. I don't think we need to get to Seagate, Your Honor. That standard is from the DeWalt patents in this case. We believe that's true also, Your Honor. I want to challenge Black & Decker. I want them to point to the court, something in the record, anything in the record, that says that the DeWalt patents are the patents asserted in this case. We'll ask them. Go ahead. Can I turn to infringement? Sure. I'd like to turn to infringement. I'd like to turn to infringement, too. Did you file a, are you appealing to denial of general non-infringement? Because it's suggested somewhere, but I really do, with your infringement argument, not appeal. It's being a claim of obstruction. It is a claim of obstruction. So you're not appealing. The judge did deny you general non-infringement. I don't know that we have a general non-infringement. Okay. But that's not before us. Right. The issue before the court is a claim of obstruction. So the review should be denied. Okay. I'd like to start with power convergences. Maybe with a little background of what was actually in it. Mr. Gonsalves was going to get an adapter for the interface between a radio and a battery. With his adapter, batteries, power cord batteries have different contact configurations. With his adapter, he could use all sorts of batteries with his radio. He could use batteries with different voltages. When he did that, he had voltage DC-to-DC converters within his adapter so that the voltage could be adjusted to power the radio or to charge the battery. What do you say that a power convergent circuit means? What does it cover? It covers components that convert power. The court considered it to mean something that changes power. There's a difference. But don't you consider that it means changing all the voltages up or down of DC-to-DC? Yes, Your Honor. If the plant construction that the court gave was changes voltage, we wouldn't have a problem. It simply says changes. Were you telling me that it's only a changing voltage? It's limited to a changing voltage? That's what the patent talks about. No, I'm not asking about the patent. Is that your position, that this language means, to be interpreted to mean, a circuit that converts DC power to voltage DC power? Yes, Your Honor. That's all it means? We believe so, Your Honor. That it wouldn't cover converting AC power? Not under the patent. And it certainly wouldn't cover converting AC to DC in DC days? That's right, Your Honor. But what you're trying to limit us to is figure 7, right? That seems to be a preferred embodiment. But it's claimed by those particular features that jump the power level up or down to account for differences in recharging capacity. Those are claimed in Claims 4 and 5, which are dependent on 1. We would presume that 1 is broader. And indeed, Figure 6 shows us a broader embodiment. Why aren't you just asking us to limit ourselves to a preferred embodiment? There are many elements of the preferred embodiment that we don't think should be incorporated in the claim. What should be utilized in the specification is, the specification should be utilized to determine what the patentee actually intended. But the specification only refers to those step-up and step-down converters as embodiments. Right. And we believe our position is, for example, a voltage regulator, which is not a step-up or a step-down. The language of the claim is broad. Power conversion circuitry is quite broad. The only thing that's supported in the specification is using DC to DC converters to achieve the power conversion. Well, but what's in Figure 6? We have in Figure 6 just a power conversion. A conversion is moving the power from the radio to the battery pack and back and forth. Why isn't that an adequate representation of voltage? Figure 6 relates to a system where the battery voltage matches the voltage of the radio. There's no conversion of voltage in that system. In other words, if the radio functions at 12 volts... There's no conversion of voltage. But why couldn't, according to the district court and this figure, why isn't there a conversion of power in that it is moved from perhaps the battery pack to the radio and thus converted into two signals instead of one and operating into two functions instead of one at the same time? Why isn't that the power conversion circuit represented in 6? And as interpreted by the district court. If that were the power conversion circuit, if it were that broad, then there would be no way to find what's between. Claim 1 of the 059 patent requires the power conversion to be between certain things. There's a spatial limitation. If you're willing to say that change is all you need, something that changes electrical energy, there's no way to know where to draw the line. Everything changes electrical energy. The wire changes electrical energy. Well, in figure 6, you've got the converter between the power source and the battery and radio, right? You've seen that wrong. It comes in here, split, converted. Let me get to figure 6. Isn't that between the top and the bottom? Okay, figure 6. AC power comes out of 51. Yeah. And then there's a transformer. Yeah, exactly. Which converts it to DC. It connects to the transformer and goes to the radio. Or to the battery pack. Or both. Right. Why is that the power conversion circuit? Why is not the transformer the power conversion circuit? If it were construed to be the power... It's not. It's not called the power conversion circuit in the specification. Well, where is the power conversion circuit in figure 6? In figure 6? I don't believe there is one, no. As you would observe it. Right. If you want to say that a transformer can be a power conversion circuit, right? Then in the Bosch power box, there are transformers here and there. Here and there. And they're not between the power supply. The power supply in figure 6 is the block marked 30. If that's... Yes. Okay, see? If that is the power conversion circuit, the same thing will hold true in figure 7. Same component. If that's the power conversion circuit, it can't be between itself. That's the power supply. The power conversion circuit can't be between itself and something else. So, in your reading, the power conversion circuit is 68 and 69 in figure 7? That's right. Period. It doesn't have to be a DC to DC converter. It could be a voltage regulator. We believe our position is supported by the specification. It's the only way to convert power from DC to DC. We believe it's supported in the file. Could you just, again, articulate what you think the correct instruction is? Sure. The power conversion circuit is a plurality of DC to DC converters that changes electrical voltage. And then the rest of the claim speaks to the look. Whether it's what it's between. And maybe it's an architectural limitation. It seems to me that, at least the enablement stuff, seems to be incorporated in your definition of power conversion circuit. No. The enablement limitation. This readout of an actual power conversion circuit goes on to talk about the between. And then it goes on to say 2 and 8. How are you construing a 2 and 8 voltage that removes what the power supply is there? The power conversion circuit has to function to enable the charging of the battery. And the use of batteries in multiple voltages with the radio. Let me say the final name of your instruction phrase. It's a rather broad phrase. Power conversion circuit. And you're trying to use what seems to me to be a fairly limited interpretation. You say, well, all it covers are those power conversion circuits that convert the voltage in the direct current. And my suggestion to you is, if the plan C intended such a limited interpretation of this phrase, why didn't he put it in there? Why didn't he say power conversion circuit that converts the voltage in DC current? I told him that. I knew there had been a question about it. But Scott didn't have a flurry for what he put into it. And you seem to say that despite this broad language, we should interpret it in a very limited way. Because, as you said, it starts to change. My time is up. But I believe it's also supported in the file of history. The examiner, between his reasons for allowance, said you're over the prior art because there's no DC to DC converters, converters plural, in the prior art. And also in the Black & Decker's in an office action, they say preferred embodiment is a pair of DC to DC converters. And then right after that, they say disinvention, referring back to a pair of DC to DC converters. We think our position is fully supported in the specification of the claims in the file of history. My time is up. Thank you. Could you give additional three minutes to Mr. Dyer over the media? Or Mr. Trimac has time. Good afternoon. May it please the Court. What's the evidence of Bosch knowing of the Dohm's patent for infringement? I'd like to start by answering that question by saying what Bosch is asking this Court to do is place itself in the role of jury. They want this Court to re-examine PTX 34. Show me in the record the evidence of Bosch knowing of the Dohm's patent for infringement. I would start with PTX 34, which is the document the Court alluded to earlier, where Bosch specifically talks about a DeWalt radio charger patent. DeWalt's in the Smith family? DeWalt is a company, is a brand name for Black & Decker, under which it's radio-controlled. Yeah, but is the DeWalt reference there a reference to the Smith family patents? If they meant the Smith patents, they would have said the Smith patents. I think there's ambiguity here that has to be resolved by the jury. There's also ambiguity in knowledge, and if you don't have knowledge, it's a little hard to have knowledge, particularly when we've kicked the standard up to recklessness now instead of negligence. The knowledge is in the testimony of Mr. Gray when he was asked in cross-examination. You say that you talked to Steve Cole and John DiCicco. Correct. Answer. Question. About whether or not there was infringement of the Dohm's patents. Answer. Of the Dohm's patents. Question. Right. The Dohm's patents at issue in this case. Answer. Okay. At the time, I didn't know. That there, that is testimony. At the time, I did not know? He said, okay. At the time, I did not know. Wait. What's the question? Answer. Okay. Let me explain. You interpreted okay, I did not know as meaning I didn't know? The answer was okay. Period. What was the question? The question was that's the Dohm's patent at issue in this case. Okay. I did not know the Dohm's patent. Okay. At the time, I did not know that. I think the okay, if I were listening, I'm not present there is the problem. But if I'm interpreting that, it's okay, I've got the question. I did not know the Dohm's patent. Well, that's the problem with asking this court to put itself in the role of the jury. The jury was there. They heard the answer. They heard whether there was a pause or it was okay, I don't know. Or whether it was okay. Based on the record. And I've got to find evidence that there was reckless behavior under the current standard in the law. And absolute clarity and knowledge of the patent in order for there to be recklessness. And all you provided me is the DeWalt, which could have been the Smith patents, and an okay. I think if you really step back, based on this testimony, is the question Bosch could have asked. And that is, does the DeWalt patents mean anything other than the Dohm's patents in this case? They could have asked Mr. Gray that. They could have asked any number of other witnesses that. They did not ask that question. Because they were afraid. It's not their turn to prove willfulness. It's that they weren't willful. It's your turn to prove they were willful. In addition, I might add that in Clay's argument, Bosch's counsel referred to the Dohm's patents as the DeWalt patents. Can I move on just on the same area? But the judge here, and it's on 898, I think it was a tramp on the appendix, says Bosch had legitimate defenses to Black and Denver's infringement claims. So that's what the court said. Why isn't that sufficient to defend willfulness under Seagate? That's not sufficient because you have to, under Seagate, you have to look at objective reckless behavior. What is their behavior? The district court used a standard, and JMOL is very similar to the standards set forth in Seagate. And she reviewed and understanded that the extent to which the infringer disregarded the property rights of the patentee, the deliberateness of the tortious act, or other manifestations of unethical or injurious commercial conduct may provide grounds for a finding of willful infringement. Based on that standard, the district court looked at evidence of Bosch's willfulness and Bosch's copy, separate and apart from Bosch's duty of care. And it found under that standard alone that there was sufficient evidence of willfulness and copy to meet that burden. Let me shift to the claim construction. Where is the power conversion circuit in Figure 6? Figure 6, the power conversion circuit. The power conversion circuit. Conversion requires. Could be seen in the dials. Figure 6, you have the dial. But it is Figure 7 that truly talks about converting. Well, yeah, okay. Figure 7, for instance, his point that the power conversion circuit is. Should be limited to a pair of. Yeah. Easy conversion. We can. Limited to something that is stepping up or stepping down in power as in 68 and 69 in Figure 7. It's not present in 6, right? It's not present in 6. There's no conversion. And is the district court wrong? The district court is not wrong because there's other instances in the patent and specifically in the claims that would indicate that claim 1, the power conversion circuit, is not limited to a pair of DC-DC converters. For example, if you look at claim 2, that is a dependent claim which gives further meaning to the power conversion circuit. And it says, wherein said power conversion circuit includes a first converter circuit for receiving said second DC output voltage. I understand the point about the dependent claims. Is there anything in the specification, however, that describes conversion in any way other than using the DC-DC converters? If you go to the summary of the invention, and this is specifically column 2, line 63, it talks about a DC-DC power source converter for supplying power to said rating. And that's used in the singular. And if you look at the prosecution history, it really explains what's meant by a power conversion circuit. It says that if you look at right in the first paragraph of an amendment, remarks made to an amendment, and that's 22.839, that a significant feature of the present invention, which is neither disclosed nor suggested in the reference to the record, is the provision of circuitry, not specific DC-DC converters, not a pair of DC-DC converters, but the provision of circuitry in the subject invention that allows portable radios to operate on various types of conventional batteries. The next page of that office action, it says that this is made possible by the provision, by the power conversion circuit that adjusts voltage that is supplied. And then the next sentence really gives some meaning to this. It says, in the preferred embodiment, the power conversion circuit is implemented by a pair of DC-DC converters, indicating that there's other embodiments, there's other ways to go about this other than a pair of DC-DC converters. If you look at it as a district court, it's interpreted far more broadly than that. Anything that changes electrical energy, whatever that means. If you look at throughout the prosecution history and the past, the word change, the word adjust, convert, reduce is used, which also means change. And electrical energy is just another word for power. In fact, if you look in the dictionary, if you look at specifically the way power is used with power tools, it refers to electrical energy. It defines power as electrical energy. It's not a change, it's synonymous with converts, as has been used as a different word. We believe so. Converts, adjust, reduce. It's just a synonymous term. Some change can occur. But it's a change that is made in the electric current. It's not a change from the electric current as heat or something like that. It changes the way in which the electric current is used in the device, basically. This is highly non-practical talk. And you have to look at the power conversion circuit in light of the other terms of the claim. We're talking about, we're enabling. In the accused device. Where's the power conversion circuit? There's ample testimony that it was JK1 combined with IC4. And that JK1 combined with IC4 performed the function of the claim, which is to enable the battery to power the radio and to enable the radio to be charged. And if you look at claim 1 of the 925 patents, but you're not converting anything there, are you? Are you converting anything? You're changing electrical energy. Well, how do you change it? From what to what? Because for the battery to power the radio, it has to go from 12 to 24 volts to 6 volts necessary to power the radio. At any voltage level? Are you enabling it to say that it allows it? No, within a selected voltage. Where are we getting that? I mean, where did you get the notion that to enable under the claim term, can that barely be construed as enabling it to power the radio or to charge the battery in any voltage? No. So you're saying it's true that at what voltage? Are you talking about regardless of voltage? I'm talking about starting with enabling. I mean, I don't know how to define that. I'm just going to take it there. But I'm reading the language in the claim, beginning with to enable and everything that follows. Right. It says that to enable the power conversion circuit disposed between, say, AC power and DC power supply. Regardless of the magnitude of the second DC output coming in from the second DC power supply. Doesn't that suggest that it doesn't matter at any voltage? No, no, no, it doesn't. Because you have to look at what is the magnitude of the second DC output voltage. And if you look at the preceding paragraph, you have removal of DC power supply. And it says, set removal of DC power supply being selected to generate a second DC output voltage having a magnitude in a range. So you're talking about a selected range. Having a magnitude in a range. Having a magnitude. That includes voltages both lower and higher. But it's selected. So it can raise it or lower it, right? If it includes voltages both lower and higher than the magnitude of set first DC. It doesn't necessarily say it can raise it or lower it. It says that it will operate within those ranges. It will enable within those ranges. Within the range of 12 to 24 volts, it will enable. Well, the claim language says magnitude in a range. Where is the specificity with respect to the range? The range is selected. And the specificity is with respect to the selected range, either higher or lower. And that's the specificity. If you look at Claim 7. I've got JK1 and IC4 as my DCC. Where is the between? The between? And that's demonstrated in our briefing evidence in the brief on page... On page 38. Maybe I'm missing the question. Another contested limitation is between. Is it between or betweenness? The betweenness is because JK1 is between the battery and the radio. And the power supply. Is IC4 as well between? Is IC4 between? IC4 is between the battery and the radio. And it's the combination of the two. And looking at the elements of the claim, JK1 enables the battery to... It enables the power supply to charge the battery. And that's the evidence reviewed by the jury. That's the evidence found by the jury. Once again, Bosh is asking this court to place itself in the role of the jury. If I may move on very briefly to... Your prosecutor won't get further consideration. I'd like to briefly describe... Or briefly discuss the injunction. That you have... The district court specifically excluded a radio charger. A new radio charger, as Bosh described it. That existed at the time of judgment. But is not in this case. I think that the internal rectifier case... Gives guidance of what to do in this situation. In internal rectifier... This court said that supplemental pleadings are optional. And thus, neither the defendant nor the district court... Had the authority to force the patentee to supplement his complaint. In essence, that's what happened here. The complaint was not supplemented. Additionally... But isn't there considerable discretion in the district court... To decide whether that is enough to... Justify the looking in, or whether that's sufficient? Do you... Do you consider the sanction that was imposed... That you cannot make any reference to this new device... That that was improper? You do, no? We do. Why? Because there's a clear error on the court's part. What is the clear error? In the expert report. Did this court make the error, or did the other court dismiss it? No, it's this court that made the error in the first instance. Because in the expert report... The expert identified the new product. He talked about the new product. And what was that expert report's evidence? Where in the report? It was submitted after the closing of Texas. Discovery was over? Discovery was over, but expert discovery had not closed. The district court would have... Discretion to decide... This is in time, I'll hear it, or it's not in time. It's a separate suit. They filed a separate suit. That's the problem. It gets dismissed for estoppel reasons. Well, the... That's the one that ought to be appealed. Well, I think you have to look at it. In this instance, there's two choices. Is that on appeal, by the way? It's not on appeal, no. It's not on appeal? Pardon? It's not on appeal? The case isn't final because there's another patent involved in the case that's still going forward. So it's not right to appeal? Right. So when it is right... If we were to affirm in this case, do you let it appeal? Is that a ruling? If you would affirm in this case, we'd have no choice but to appeal and affirm that ruling. That would give me the opportunity to determine how this issue should be looked at. Well, there's two options. One is that one. The other is contempt. It would be difficult to say contempt proceeding on the injunction explicitly so that it doesn't cover this. How could you be in contempt of the injunction for doing something that the injunction said doesn't cover? Well, that's where... Normally, in contempt cases, if you have an injunction and someone makes a different product, and the question is whether the different product is covered by the injunction in the injunction said, it doesn't cover the different product. But you're asking the judge to... I understood what you're asking this court to do is to modify the injunction so that it doesn't explicitly exclude that product so that you would be able to try at least to proceed contempt. That's correct. That's where the error occurs. If it's error. If it's error. That's where we contend with error. You've got to say the abuse is discretionary. We look at it as this should be reviewed de novo because you're looking at the scope of the injunction. You're looking at specifically, for example, in case law, where you look at... Is this injunction... Place this in the case in the first place would be a question of discretion, right? Right. And if you look at the scope of the cases that applied de novo review, they look at the mandate of the injunction, which here, the mandate of the injunction specifically excluded a product. Mr. Nero, we need to hear that. Across the table time as well. We'll give you back a couple minutes of that. Mr. Trembath had three minutes. We need to give him two more so that we're still staying even. So he'll have five and he'll have two coming back, Mr. Nero. And that'll be pretty close to even. Mr. Trembath. Thank you, Your Honor. I'd like to address a couple of things that Mr. Nero talked about. JK1 is a switch. It's nothing more than a switch. It lets current flow from the power supply to the radio or from the battery. That's all it is. The voltage on both sides of JK1 is the same. It doesn't convert any power. As noted by the panel, the claim requires that radio-operated batteries below and above the voltage that comes. That requires, necessarily, two converters. IC4 is a voltage regulator. It sits right in the middle of the radio circuit. So it's not between the two. That's right. I would like to, when the time is flying away, I would like to address some of their arguments on the injunction. We didn't get a chance because it raised facts in their reply. I want to give the court some record sites. They say they couldn't have alleged infringement because there wasn't any sales. They took a deposition before the close of that discovery. They learned that we had samples in the United States and we had tested those samples. That would give them a basis for bringing it to, if they so desire. The sites for that is eight. But I will interject. Let's assume the judge was absolutely right, or at least properly exercised her discretion with respect to not letting them put it in their evidence. The question I have is with respect to the injunction, that the injunction explicitly excludes products and there's been no adjudication. Why shouldn't they have the ability at least to come to court on a contempt if they have no adjudication in respect to the product? The new PowerBox, the PowerBox Advance was excluded because of a sanction, right? Right. So they were excluded from bringing it forward in this case. In this case, that's right. And let's assume that we agree with you that the court clearly had a basis to do that. But even so, they were excluded from bringing it on to this case. That's their sanction. Yes. But how is it kind of appropriate to also impose a sanction? Do you call it a sanction? Does the district court say I'm imposing an additional sanction on you by excluding it from the injunction? No, but if she had included the new PowerBox in the injunction. Well, no, I'm not suggesting that. Not that she included it in the injunction. It seems to me there are at least three ways to go. Specifically excluding it, as she did. Specifically including it, which I'm not suggesting. But the other is to be silenced. So that they can come forward on contempt and make whatever case they can make as to the similarity of that with the injunction, you know, that it comes with anything. But doing that effectively negates her exclusion of the PowerBox Advance from the case as a sanction. But didn't she exclude it specifically because there was another suit pending? She excluded the PowerBox from this case because it wasn't described in her auditory responses. I can't speak to what she was thinking. That's not what she said? I don't recall. What she may have. What she may have, but I don't. I don't recall. I want to use those slides real quick. All right. A8533, A8536, and A552. Also they said that they disclosed the new PowerBox in their expert report. I challenge Black & Decker to point to one piece of evidence in the record from their expert report that shows where they talked about the power conversion circuit and the new PowerBox. It's not there. What I'm bothered by is it looks as though, although there's a claim by Black & Decker that the new device is infringing. There's no way Black & Decker could possibly ever get that thing litigated. It can't get it litigated in this case because it was excluded from the judgment. And they tried to litigate it in the second case. But this court said, well, you should have righted it in the first case. If I might address that. And actually, it sounds real. It sounds a little unfair unless you say that this is the consequence of their own misdeeds in not righting it sooner than it was discovered at this time. That's exactly what we would say. And Bosch was precluded. And that this is an appropriate, that this is the consequence of what they did. They can't complain that they had no intent to litigate this because it was the result of their own misconduct. Bosch was precluded from meritorious defense as a trial for the same reason. And those defenses are forever gone. Bosch is now saddled with a damages award and an injunction on product. There is a balance. That's what happens when you don't satisfy your discovery obligation. Final comments, Mr. Trembath? Your Honor, I thank the court. Thank you, Mr. Trembath. Your Honor, we have two minutes left. Just briefly, I'd like to address the discovery. Judge Friedman, you asked why it was provided. The new Bosch power box wasn't available for sale until after discovery closed. That's why it was first included in the court of the expert. But you didn't seek to amend any of your discovery's measures, did you? You said we now want to amend this, point out that it's a new product they're making. As I understand, it's a new product that you get only in this textbook. Is that right? We thought that was fair notice to put them on notice of the claim against the new power box. They had an opportunity to pose the expert with respect to his opinion on the new power box. And the district court ruled it was not true, is that right? That's correct. You're asking us to set it that way. But I'm saying put that aside with respect to the injunction and the contempt proceeding, whether or not it was a sanction. International Rectifier said that one black and black doesn't have an obligation to bring it into the case. And this court has never held that you hand product into the case in order to go forward with a contempt proceeding. And that's all we want, is the ability to go forward with a contempt proceeding. But what you're asking us to do is just to delete from the injunction that exclusion of the new device. That's correct. The parenthetical thing that you put in there, you want us to strive for that? The specific exclusion of that product from the injunction order. We're not asking the court to decide contempt or make any ruling with respect to contempt. That would be done in a separate hearing under the standards set forth in the case. And with that, I have no further questions. Thank you.